APPLICATION OF THE MONTANA BAR ASSOCIATION FOR UNIFICATION AND INTEGRATION OF THE BAR OF THE STATE OF MONTANA.

No. 10234.
Submitted May 8, 1961. Decided January 19, 1962.
368 P.2d 158.

Ben E. Berg, Jr., Bozeman, Robert E. Sullivan, Missoula, McKinley T. Anderson, Jr., Bozeman, Russell E. Smith, Missoula, Weymouth D. Symmes, Billings, Franklin S. Longan, Billings, Wesley W. Wertz, Helena, H. Cleveland Hall, Great Falls, Gene A. Picotte, Helena, for proponents.

Joseph P. Monaghan, Butte, Wellington D. Rankin, Helena, Jeremiah J. Lynch, Butte, Leo J. Kottas, Myles J. Thomas, Helena, James H. McAlear, Red Lodge, Robert H. Wilson, Hardin, Wm. N. Geagan, Butte, Hubert J. Massman, Helena, Leon L. Bulen, Missoula, LaVerne V. Harris, Leif Erickson, Helena, for protestants.

PER CURIAM.

Application was made to this court by the petition of the officers of the Montana Bar Association to order the unification and integration of the Bar of the state. The prayer of the petition was that "the Bar of the State of Montana be inte-

grated and unified in an appropriate manner after due consideration of the problems relative thereto by [this court], and further that this Court issue an order: (1) appointing a time and place for hearing this petition with respect only to the preliminary question as to whether or not the Court's inherent power to unify and integrate the Bar shall be exercised at this time, and providing for proper notice of such hearing; and (2) providing further that consideration of all other issues raised by this petition, including questions regarding the structural form of the proposed integrated Bar organization and the definition of the rights, duties, and conditions of membership therein, be deferred until such preliminary questions shall have been determined.''

This court entertained the petition by setting a time and place for the hearing and gave notice by mailing to all licensed members of the Bar from the Clerk's annual license records a copy of the order. On the date set, proponents and opponents were heard at length. Numerous petitions, letters, and informal expressions of opinions were received. Pending the hearing mentioned, the Chief Justice conducted an informal postcard poll of active practicing attorneys within the state. The poll was not all-inclusive but was a rather large sampling of opinion.

The postcard poll contained three propositions: For Integration, Against Integration, Don't Care. The responses were anonymous in part and came back in a wide variety of expressions in addition to the three questions asked. Eight hundred twenty-five cards were mailed. Of the 825 cards mailed, 595 were responded to; 288 voted for, 280 against, 27 expressed ''Don't Care'', 230 cards were not returned. From this no definite conclusion can be made, but these observations seem appropriate: About one-third of the lawyers are against unification, about one-third for unification, and about one-third do not care. From the expressions added to the postcards and from letters received concerning the poll, one obvious conclusion is that *a large seg-*

*ment of our Bar do not know or understand just what unification and integration of a Bar entails or contemplates.*

Also, it is apparent that many of those who voted against integration of the Bar did so because the Bar Association's petition did not include a plan which would indicate the structure of the proposed organization, the areas of control, the proposed fees to be levied, or any other matters. In other words as one attorney expressed it, "I don't feel like buying a pig in a poke".

The same matter has been before this court in 1938, In re Unification of the Montana Bar Ass'n, 107 Mont. 559, 87 P.2d 172; and in 1946 In re Unification of Bar of this Court, 119 Mont. 494, 175 P.2d 773.

In 1938, the court made two conclusions: (1) that this court has the power and authority to adopt, promulgate, and enforce all necessary, proper and appropriate rules for its own government and for the admission and regulation of attorneys at law; (2) that the situation in Montana did not demand a change and therefore the petition was denied. One justice dissented vigorously to the second conclusion stating that in his opinion the integrity of the Bar was at stake and that the rapid growth of administrative boards and bodies had been the result of court failures, suggesting that an integrated Bar would strengthen the judicial branch of government and improve the administration of justice.

In 1947, this court again declined to order integration of the Bar. In that year the court at 495 of 119 Mont., at 773 of 175 P.2d said: "some members of this court entertain the opinion that the integration or unification of the attorneys at law of the state into a compulsory, all-inclusive organization must come through legislative and not through judicial action, while other members hold to the view that, assuming authority in this court to provide for integration or unification of the bar, the existing situation does not require or justify the creation of a compulsory and all-inclusive association * * *."

In addition to other attempts to integrate through this court, several attempts have been made through the legislature without success, the last one coming to our attention having been in 1943.

In Montana, section 93-2010, R.C.M.1947, imposes an annual license tax of $10.00 per year. This amount is collected by the Clerk of the Supreme Court. The legislature has provided various statutes governing admission of attorneys and in section 93-2007, R.C.M.1947, provided:

"*Supreme Court May Establish Rules.* The supreme court may establish rules for the admission of attorneys and counselors not inconsistent with this chapter."

The court has since its inception exercised its power over the practice of law. Just as this court at p. 562 of 107 Mont., at 173 of 87 P.2d observed in 1938, "This court * * * has the power and authority to adopt, promulgate and enforce all necessary, proper and appropriate rules for its own government and for the admission and regulation of attorneys at law." The authority for this expression is an incident of the judicial power derived under the Constitution, Art. VIII, and Chapter 20 of Title 93, of the Revised Codes of Montana, 1947. We see no point in discussing "inherent power" or "implied power" of the court to control its own operation. This has been firmly settled. For cases in which this court has referred to the power inherent or implied see Territory v. Murray, 7 Mont. 251, 257, 15 P. 145; State ex rel. Boston & Montana Consol., etc. v. Clancy, Judge, 30 Mont. 193, 200, 76 P. 10; In re Mettler, 50 Mont. 299, 302, 146 P. 747; State ex rel. Metcalf v. District Court, 52 Mont. 46, 48, 155 P. 278, L.R.A.1916F, 132; State ex rel. Rankin v. District Court, 58 Mont. 276, 288, 191 P. 772; State ex rel. Hurley v. District Court, 76 Mont. 222, 232, 246 P. 250; State ex rel. Burns v. District Court, 83 Mont. 200, 207, 271 P. 439; State ex rel. Cheadle v. District Court, 92 Mont. 94, 99, 10 P.2d 586; Finlen v. Heinze, 27 Mont. 107, 118, 69 P. 829, 70 P. 517; State ex rel. Whiteside v. First Judicial

District Court, 24 Mont. 539, 558, 63 P. 395; State ex rel. Kennedy v. District Court, 121 Mont. 320, 327, 194 P.2d 256, 2 A.L.R.2d 1050; In re Hansen, 101 Mont. 490, 501, 54 P.2d 882; State ex rel. Freebourn v. Merchants' Credit Service, Inc., 104 Mont. 76, 94, 66 P.2d 337; Bullard v. Zimmerman, 82 Mont. 434, 452, 268 P. 512; McDonald v. McDonald, 124 Mont. 26, 32, 218 P.2d 929, 15 A.L.R. 2d 1260; State ex rel. La Point v. District Court, 69 Mont. 29, 37, 220 P. 88; State ex rel. Bennett v. Bonner, 123 Mont. 414, 214 P.2d 747.

Examples of this court's use of its power is found in our Rule XXV, wherein this court has made provisions of eligibility for admission to the Bar over and beyond the legislative enactments.

In a publication of the American Judicature Society, entitled, "Citations and Bibliography on The Integrated Bar in The United States", published in July, 1961, this brief introduction is made:

"The integrated bar movement is a development of major significance on the American legal scene. The first voices urging its adoption were heard some 45 years ago, and in 1921 North Dakota became the first state to have an integrated bar. Since that time, bar integration has exhibited remarkable vitality and growth. Today more than half the states in our federal system have adopted this form of bar organization and the Supreme Court of the United States, in the first expression on the matter, has affirmed a decision sustaining bar integration in Wisconsin. Lathrop v. Donohue, 367 U.S. 820, 81 S.Ct. 1826, 6 L.Ed. 1191 (1961), affirming 10 Wis.2d 230, 102 N.W.2d 404 (1960).

"As developed in the United States, integration of the bar refers to the establishment—whether by statutory enactment (based on legislative police power) or rule of court (based on inherent authority to regulate the profession) or a combination of both—of a government sanctioned, dues-paying organization of all lawyers admitted to practice in a state. The jurisdictions

in which integrated bars in 1961 were in operation, including dates and methods of establishment, are:

| State | Date | Means of Integration |
|-------|------|----------------------|
| Alabama | 1923 | Statute |
| Alaska | 1955 | Statute |
| Arizona | 1933 | Statute |
| Arkansas | 1938 | Const. Amendment |
| California | 1927 | Statute |
| Florida | 1949 | Court Rule |
| Idaho | 1923 | Statute |
| Kentucky | 1934 | Statute & Court Rule |
| Louisiana | 1940 | Statute & Court Rule |
| Michigan | 1935 | Statute & Court Rule |
| Mississippi | 1930 | Statute |
| Missouri | 1944 | Court Rule |
| Nebraska | 1937 | Court Rule |
| Nevada | 1929 | Statute |
| New Mexico | 1925 | Statute |
| North Carolina | 1933 | Statute |
| North Dakota | 1921 | Statute |
| Oklahoma | 1939 | Court Rule |
| Oregon | 1935 | Statute |
| Puerto Rico | 1932 | Statute |
| South Dakota | 1931 | Statute |
| Texas | 1939 | Statute & Court Rule |
| Utah | 1931 | Statute |
| Virginia | 1938 | Statute & Court Rule |
| Virgin Islands | 1956 | Court Rule |
| Washington | 1933 | Statute |
| West Virginia | 1945 | Statute & Court Rule |
| Wisconsin | 1956 | Statute & Court Rule |
| Wyoming | 1939 | Statute & Court Rule.'' |

In the American Judicature Society publication is contained reference material from all sources, the pros and cons, fore and aft.

It is only fair to say too that some states, including our own, have specifically rejected integration, although almost without exception the courts have assumed to have the power to integrate if they chose to do so.

In the year 1946, only a few days prior to our own court's decision not to integrate, the Wisconsin Supreme Court likewise declined in "In re Integration of the Bar, 249 Wis. 523, 25 N.W.2d 500. That court previously declined in 1943, Integration of the Bar Case, 244 Wis. 8, 11 N.W.2d 604, 12 N.W.2d 699, 151 A.L.R. 586. In 1956 the Wisconsin court in In the Matter of the Integration of the Bar, 273 Wis. 281, 77 N.W.2d 602, integrated the Bar on a two-year trial basis. In 1958 in In re Integration of the Bar, 5 Wis.2d 618, 93 N.W.2d 601, the court ordered final integration, reserving specifically the power to discipline and disbar members.

The validity of the Wisconsin decision was challenged in a suit carried to the United States Supreme Court. In Lathrop v. Donohue, 10 Wis.2d 230, 102 N.W.2d 404; 367 U.S. 820, 81 S.Ct. 1826, 6 L.Ed.2d 1191, the validity of dues assessment was upheld. Orders of the Wisconsin court integrating the Bar and approving rules and by-laws of the Bar, imposing requirements of compulsory membership, and payment of annual dues, were held not to violate, on the record presented, any constitutional rights of attorneys. The United States Supreme Court pointed out that the bulk of State Bar activities serve the function "of elevating the educational and ethical standards of the Bar to the end of improving the quality of the legal service available to the people of the state, without any reference to the political process."

In our court's first declination (In re Unification of Montana Bar Ass'n, supra, 107 Mont. 559, 562, 87 P.2d 172) to integrate the Bar it made some interesting observations. It

said as to the first proposition considered, whether the court had the power to order integration, that it did.

As to the second proposition it commented:

"The second proposition involves the necessity for and the wisdom of adopting and putting into effect the proposed rules and regulations. This involves, to some extent, consideration of the success or failure of the rules already in effect. If the present rules are satisfactory and efficient, if under them a fair measure of beneficial results has been achieved and enjoyed, the need for change cannot be said to be imperative. If, on the other hand, our system and rules have become outmoded and are no longer suited to our needs, or adequate for our purposes, the necessity for the new or proposed rules should be obvious to anyone familiar with the facts.

"The rules now in effect are the result of trial and error. They were not all adopted at one time, or put into effect upon conjecture. They were evolved from experience as judged, appraised and applied by a long line of able, efficient and brilliant lawyers and jurists. We hesitate to sweep them all aside and consign them to the wastebasket in order to replace them with other and different rules, modern and progressive though they may seem.

"The present members of this court have a larger measure of pride in the record and standing of the court as accomplished and written into our judicial history by the many able men who have served upon it, than they can possibly have in their own ability and wisdom. That being so, we hesitate to say that we can in a new set of rules to be formulated and promulgated at this time sufficiently improve the situation in Montana to justify the experiment. Admittedly, the proposed plan carries with it many features that are comparatively new and have not yet been tried sufficiently entirely to demonstrate their worth and their advantage over the existing rules."

It is noteworthy that twenty-three years later, not a single state that has adopted an integrated Bar has gone back to the

old system. No longer can the integrated Bar be referred to as an experiment.

Until recently, this court has not been in position to be a critic of delays in justice. Its own docket was anything but current. Now, however, our docket being current and the new rules of Civil Procedure about to become operative we believe it timely to look forward to improvement of the Bar itself. There is need for improvement in our court, the district and justice courts, and in the Bar of which we are members.

Previously we have noted the history of the movement in Wisconsin as it finally culminated in the Lathrop v. Donohue decision of the United States Supreme Court. We likewise wish to proceed with caution and not "buy a pig in a poke" nor force something on an unsuspecting or uninformed Bar.

In this connection the Minnesota Supreme Court in 1943 in Petition For Integration of Bar of Minnesota, 216 Minn. 195, 12 N.W.2d 515, 518, said:

"Having made clear our position on the foregoing questions, we now consider the propriety and expediency of exercising such power in the manner here requested. The fact that this inherent power is possessed by the court imposes upon it the responsibility of exercising it fairly and justly, and not in an arbitrary or capricious manner, or in any manner except to aid in the development of a strong and vigorous bar to assist the court in the performance of its functions."

That court later, in 1948, in In re Integration of the Bar of Minnesota, 226 Minn. 578, 34 N.W.2d 157, rejected integration as being no longer desired by the Bar.

■■ Therefore, we reiterate this court's long-standing view that we do have the power to integrate the Bar. As to the second phase, we propose to order the appointment of a volunteer committee of lawyers and judges, voluntary in the character that no funds for expenses may be met, representing a wide grouping of areas, ages, and views to propose a plan of integration after submitting it by mail to all licensed lawyers

of our Bar and considering the objections and suggestions presented. At that time, to be named in our order, the committee shall recommend to this court a specific plan. This court shall then hear anew these questions: First, shall we adopt the integrated Bar plan presented; and, second, if we answer in the affirmative, specifically what shall the mechanics of such plan be including what supervision and power shall we retain in addition to whether it be adopted on a probationary basis or in permanent form.

NOTE: The Hon. GUY C. DERRY, District Judge, participated in the hearing and determination of this appeal in the place and stead of MR. JUSTICE STANLEY M. DOYLE who was disqualified.

MR. JUSTICE ADAIR:

I dissent and reserve the right to hereafter attach hereto in writing my reasons therefor.